UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| DAVID FARR, | ) | |
|       Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-779-SEB-JMS |
| | ) | |
| ST. FRANCIS HOSPITAL & HEALTH | ) | |
| CENTERS, | ) | |
|       Defendant. | ) | |


**ENTRY ON DEFENDANT'S PARTIAL MOTION TO DISMISS**


This cause comes before the Court on the Partial Motion to Dismiss [Docket No.

33] filed by Defendant, St. Francis Hospital & Health Centers ("St. Francis"), pursuant to

Federal Rule of Civil Procedure 12(b)(6).  Plaintiff, David Farr ("Farr"), brought suit

against St. Francis, his former employer, after his employment was terminated when St.

Francis allegedly discovered pornography on a workplace computer used by Farr.  St.

Francis moves to dismiss Counts II, III, IV, and V of Farr's Amended Complaint, which

allege a breach of an implied covenant of fair dealing, negligence, defamation, and

wrongful discharge.  For the reasons detailed in this entry, we <u>GRANT</u> St. Francis's

motion as to each of the challenged counts.[1]

---

[1] In addition to the four counts disputed in St. Francis's motion, Farr has also brought a claim
(Count I) alleging gender discrimination in violation of Title VII.

*Factual Background*

The facts as described in Farr's Amended Complaint are as follows.  Farr began employment with St. Francis in October 2000 as one of approximately seven respiratory therapists.  (Am. Cpl. ¶ 6.)  Farr was the only male respiratory therapist.  (*Id.*)  All of the respiratory therapists at St. Francis shared an office and a computer.  (*Id.* ¶ 7.)  Each therapist was assigned a personal password which allowed access to the computer; the use of the password produces a record of each employee's computer usage.  (*Id.*)

In April 2005, Farr was informed by his supervisors that pornography had been discovered on the respiratory therapists' computer.  (*Id.* ¶ 9.)  However, Farr's supervisors did not inform him that the pornography had been downloaded to the computer at a time when the computer was logged-on to Farr's account.  (*Id.*)  Farr denied downloading the pornography, and requested additional information from his supervisors.  (*Id.* ¶ 10.)  He was told only that an investigation was being conducted.  (*Id.*)

In June 2005, Farr left work on a temporary medical leave.  (*Id.* ¶ 11.)  When he attempted to return to work following the leave, he was informed by St. Francis that the pornography had been downloaded by him or someone using his account and that he was suspended from work until completion of the investigation.  (*Id.* ¶¶ 11-12.)  Following several unsuccessful attempts by Farr to obtain additional information about the investigation, Farr was informed by letter in August 2005 that St. Francis had completed its investigation and terminated his employment.  (*Id.* ¶¶ 14-16.)

Following his termination, Farr initiated the grievance process detailed in the St. Francis employee handbook.  (*Id.* ¶ 17.)  In September 2005, St. Francis provided Farr with specific information retrieved from the respiratory therapists' computer, including a synopsis of the websites accessed and the nature of the site content.  (*Id.* ¶ 18.)  An expert in computer science retained by Farr has analyzed the material provided by St. Francis and concluded that the pornography was not intentionally downloaded onto the respiratory therapists' computer; rather, the pornography was retrieved and saved by a computer virus without the computer operator's knowledge.  (*Id.* at ¶ 20.)

In December 2005, the Grievance Committee and the CEO of St. Francis upheld Farr's termination.  (*Id.* ¶ 22.)  Following this decision, Farr instituted this action alleging that, during the investigation and as a result of Farr's termination, St. Francis had: discriminated against Farr on the basis of sex in violation of Title VII, 42 U.S.C. § 2000e-2(a) (Count I); breached an implied covenant of fair dealing owed to Farr (Count II); negligently conducted the investigation into the allegations against Farr (Count III); defamed Farr during the course of its investigation (Count IV); and wrongfully discharged Farr in violation of public policy (Count V).

*Standard of Review*

Defendant's motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) seeks the dismissal of Counts II, III, IV, and V of Farr's First Amended Complaint for failure to state claims upon which relief may be granted.  A party moving to dismiss bears

a weighty burden; it must show that the pleadings themselves fail to provide a basis for any claim for relief under any set of facts.  *Ed Miniat, Inc. v. Globe Life Ins. Group Inc.*, 805 F.2d 732, 733 (7th Cir. 1986).

As a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in a case in which the allegations of the complaint clearly demonstrate that a plaintiff does not have a claim.  *Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, Inc.*, 161 F. Supp. 2d 948, 951 (S.D. Ind. 2001).  In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the nonmovant. *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003); *Szumny v. Am. Gen. Fin.*, 246 F.3d 1065, 1067 (7th Cir. 2001).

*Count II: Breach of Implied Covenant of Fair Dealing*

Farr first argues that the termination of his employment violated an implied covenant of fair dealing between him and St. Francis.  In support of his assertion, he cites the St. Francis employee handbook, which states in part: "It has always been and will continue to be our practice to . . . treat all employees fairly."  Pl.'s Resp. at 8, citing Handbook at 45.  Farr asserts that, by terminating his employment without presenting Farr with a "fair opportunity to present St. Francis the truth" (Pl.'s Resp. at 8), St. Francis breached its duty to deal fairly with Farr.

4

In Indiana, the presumption is strong that when employment is not for a defined or ascertainable term, it is "at-will" and may be terminated by either party at any time for any or no reason, without incurring liability. *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind. 1997). As this Court has stated previously, "[a]n employer owes no implied duty of good faith and fair dealing to an at-will employee with regard to the termination of employment." *Ward v. Indep. Order of Foresters*, 2006 WL 57184, at *8 (S.D. Ind. Mar. 7, 2006); *NIPSCO v. Dabagia*, 721 N.E.2d 294, 300 (Ind. Ct. App. 1999) ("Because, as a matter of law, [plaintiff] was an employee at will when he was terminated, [plaintiff's] claim for breach of an implied covenant of good faith and fair dealing must fail. It is undisputed that 'Indiana does not recognize such a cause of action in employment at will contexts.'") (quoting *Mehling v. Dubois County Farm Bureau Coop. Assoc.*, 601 N.E.2d 5, 8 (Ind. Ct. App. 1992)); *Hamblen v. Danners, Inc.*, 478 N.E.2d 926, 929 (Ind. Ct. App. 1985) ("Indiana does not recognize that a duty of good faith and fair dealing is owed by an employer to an employee at will.").

Plaintiff in no way disputes that he was an at-will employee of St. Francis (Pl.'s Resp. at 6 ("Farr does not dispute that he was an at-will employee.")), nor does he claim that the St. Francis employee handbook is a unilateral contract which transformed his at-will employment into a position in which he could only be fired for cause.[2] (*Id.* at 8.)

---

[2] Instead, Farr seems to argue that the St. Francis employee handbook is binding upon St. Francis without changing the at-will context of Farr's employment. However, Farr cannot have it both ways: if the employee handbook is binding upon St. Francis, thereby placing upon St. Francis the obligation to present Farr with a fair opportunity to "present the truth," then the employment relationship is necessarily changed as St. Francis is no longer able to terminate Farr "at any

(continued...)

Consequently, Plaintiff has failed to state a claim for breach of an implied covenant of good faith and fair dealing; the authority cited above establishes that Indiana simply does not recognize such a cause of action in an employment-at-will context.

*Count III: Negligence*

In Count III of his Amended Complaint, Farr argues that St. Francis breached two duties owed to him: 1) a duty imposed by the St. Francis Handbook to conduct a "thorough and fair investigation of allegations of wrongdoing that can result in termination of employments," (Am. Cpl. ¶ 34); and 2) a duty imposed by HIPAA, 45 C.F.R. § 164.308(a)(5)(ii)(B), to install and maintain anti-virus software on the computer used by the respiratory therapists in the course of their employment  (*Id.* ¶ 37).  Although artfully phrased, Plaintiff's first claim is nothing more than a general claim of negligent performance of an employment at-will contract on the part of St. Francis.  As such, Plaintiff has failed to state a claim as Indiana has heretofore refused to acknowledge a cause of action in negligence based upon an employer's defective performance of an employment contract.  *See Terrell v. Rowsey*, 647 N.E.2d 662, 666 (Ind. Ct. App. 1995) ("No cause of action exists in Indiana for . . . negligent performance of an employment contract."); *Gossage v. Little Caesar Enters., Inc.*, 698 F. Supp.160, 163 (S.D. Ind. 1988) (holding that the court lacked the ability to recognize a new cause of action under Indiana

---

(...continued)
time" as termination cannot occur until after Farr has presented his side of the story.

tort law which would allow plaintiff to sue her employer for negligent performance of its obligations to her as an at-will employee).

Plaintiff's second allegation of negligence also fails to state a claim as HIPAA does not create a duty on the part of employers to protect employees from computer-virus-related injuries; instead, HIPAA creates a duty owed by St. Francis to its patients to maintain the confidentiality of their protected health information. *See* 42 U.S.C. §§ 1320d *et seq.*; 45 C.F.R. § 164.502. *See Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1258 (7th Cir. 1995) ("A plaintiff claiming injury by the defendant's violation of a statute must show not only that the defendant violated the law but also that the plaintiff is among the persons protected by the law.") (citing *Prosser & Keeton on Torts* at 225-26).

## Count IV: Defamation

Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999). To establish defamation, a plaintiff must prove the following elements: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Id.* The determination of whether a communication is defamatory is a question of law for the courts. *McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999).

Even under notice pleading, a plaintiff must set out the operative facts of a defamation claim by including a specific account of the alleged defamatory statement in the complaint. *Trail v. Boys & Girls Clubs of Northwest Ind.*, 845 N.E.2d 130, 136 (Ind. 2006). "There is sound reason for this policy, as the absence of a statement in the complaint works a detriment on both the court and the defendant. The court is handicapped without the statement since, without it, the court cannot actually determine if the statement is legally defamatory." *Id.* at 137 (citation omitted). Although the alleged defamatory statements need not be recited verbatim in order to satisfy the requirements of notice pleading, the complaint must give sufficient notice of the alleged statement to allow defendant to form an appropriate response. *Cain v. Elgin, Joliet & Eastern Ry.*, 2005 WL 1172722, at *5 (N.D. Ind. May 3, 2005); *see Trail*, 845 N.E.2d at 136 (stating that without sufficient notice of the alleged defamatory statement "defendant is placed on an unfair footing since the absence of the statement denies [defendant] the opportunity to prepare appropriate defenses").

In his Amended Complaint, Farr alleges only that "Farr's superiors at St. Francis told other employees at St. Francis, who had no need to know, that Farr had accessed pornography on his St. Francis computer." (Pl.'s Am. Cpl. ¶ 45.) Notably missing from this allegation is any context that would allow Defendant to form an appropriate response: the allegation lacks any reference to the number of speakers or statements made, to whom the statements were made, or when or in what context the statements were made. This lack of specificity is fatal to Plaintiff's defamation claim; as written, it fails to state a

claim upon which relief can be granted.

Even if Plaintiff had specified the allegedly defamatory statements in his Amended Complaint, such statements would not support his defamation claim because he consented to publication. "[J]ust as there can be no actionable defamation if there is no publication, one who consents to publication of a statement is barred from recovery." *Ernst v. Indiana Bell Telephone Co.*, 475 N.E.2d 351, 35 (Ind. Ct. App. 1985). By initiating the grievance process, Plaintiff voluntarily submitted his conduct to investigation, thereby consenting to Defendant's publication of its viewpoint of the dispute. "One who agrees to submit his conduct to investigation knowing that its results will be published consents to that publication." *Id.*

## Count V: Wrongful Discharge

The Indiana Supreme Court currently recognizes only three exceptions to the presumption that employment without a defined or ascertainable duration, or without a specific job security agreement, is terminable at-will: 1) when the employee supplies adequate independent consideration in return for permanent employment; 2) when termination contravenes a clear statutory right or duty; and 3) when the employee establishes promissory estoppel. *Orr*, 689 N.E.2d at 718. Count V of the Amended Complaint implicates only the second of these exceptions, the public policy exception. In this count, Farr asserts that the termination of his employment constitutes wrongful discharge because St. Francis terminated him in order to cover up its violation of HIPAA.

The public policy exception to the at-will doctrine can be "generalized to the proposition that an employee who has been fired for exercising a statutory right or refusing to violate the law has a claim for wrongful discharge." *Montgomery v. Bd. of Trustees of Purdue Univ.*, 849 N.E.2d 1120, 1128 (Ind. 2006).  This is a narrow exception to the at-will doctrine, and the Indiana Supreme Court has expressed its reluctance to broaden it absent direction from the state legislature.  *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 503 (7th Cir. 1999); *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 175 (Ind. 1996) ("Generally, we are disinclined to adopt generalized exceptions to the employment at-will doctrine in the absence of clear statutory expression of a right or duty that is contravened.").

Despite the reiteration of the narrowness of the public policy exception by the Indiana Supreme Court, Plaintiff implores us to extend the public policy exception to allow a claim for wrongful discharge when an employee is fired out of expediency to cover up an alleged violation of law by the employer.[3]  (Pl's Resp. at 27.)  To bolster his argument, Plaintiff claims that his termination contravenes Plaintiff's "right to live his life free of specious and knowingly false accusations that were designed to hide his employer's wrongs."  *Id.*  Although it is likely that most people would like to live a life free from specious and false accusations, Plaintiff fails to indicate how such a freedom is clearly secured by statute (specifically, HIPAA).  As such, Plaintiff's proposed extension

---

[3] Plaintiff is not claiming that he was fired in retaliation for acting in accordance with, or refusing to violate HIPAA; indeed, Plaintiff concedes that HIPAA confers no personal rights or duties upon him.  (Pl.'s Resp. at 26.)

of Indiana law fails to meet even the minimum requirements of the public policy exception: that termination contravene a clear statutory right or duty. "General expression of public policy do not support new exceptions to the employment-at-will doctrine," *Montgomery*, 849 N.E.2d at 1128; accordingly, we decline to extend the public policy exception here and Rule 12(b)(6) dismissal is appropriate.

*Conclusion*

Accordingly, Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) is <u>GRANTED</u>, and Counts II, III, IV, and V of Plaintiff's Amended Complaint are dismissed. IT IS SO ORDERED.

Date: _09/26/2007_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jeffrey Stuart Ankrom
BERRY & DOMER
ankrom@copyrighttimes.com

Thomas Allen Berry
BERRY & DOOMER
tom@tomberry.com

Robert C. Price
PRICE & RUNNELLS
rcp1@insightbb.com

Mary M. Runnells
PRICE & RUNNELLS
mrun4@insightbb.com

John Patrick Ryan
HALL RENDER KILLIAN HEATH & LYMAN
jpryan@hallrender.com

Craig M. Williams
HALL RENDER KILLIAN HEATH & LYMAN
cwilliams@HallRender.com